The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oh, yay, oh, yay, oh, yay. All present having a manner of business before the Honorable United States Court of Appeals for the Fourth Circuit, I must give their attention, for the Court is now sitting. Godspeed to the United States and this Honorable Court. Good morning. Good morning. Mr. Kinghorn. Yes, Your Honor, I'm here. All right, you may proceed. Thank you, Your Honor. Mark Kinghorn from the McGuire Woods Law Firm. I'm here representing Matthew Orso, who's the receiver for the Rex Venture Group. And I'm joined here today by Mr. Orso. We are back here, Your Honors, for almost exactly the same reasons that we were before you in October of 2017. Back then, we were asking you to reverse the District Court's dismissal of the receiver's sanctions motion against Victoriabank because the Court applied the wrong standard of review. You agreed with us, and in the remand order, you gave the District Court two very clear choices. Number one, the Court could order or could allow full jurisdictional discovery. Or number two, the Court could weigh the sufficiency of the receiver's jurisdictional allegations under the prima facie standard rather than under the clear and convincing standard. And you also told the Court what the prima facie standard looks like. You said that if the Court chose that approach, that it must construe all relevant pleading allegations in the light most favorable to the receiver, assume credibility, and draw the most favorable inferences for the existence of jurisdiction. That didn't happen. On remand, the District Court erred again with respect to both options that you gave it. First, the Court concluded erroneously that it lacked the authority to allow jurisdictional discovery against Victoriabank. That's not the case. The rules of civil procedure clearly allow such discovery even against foreign non-parties. Second, the District Court concluded again that the receiver failed to meet its evidentiary burden to establish personal jurisdiction over Victoriabank. But again, the Court did not apply the right standard. The Court claimed to be applying the prima facie standard, but the record is clear that it did not. Rather, the Court weighed the receiver's allegations and evidence against Victoriabank's evidence and concluded that it believed Victoriabank's expert more than it believed the receiver's expert. That is not prima facie review. That is still clear and convincing review. And then to make matters worse, the Court never even mentioned the most important fact relating to personal jurisdiction, which is that Victoriabank deliberately stepped into the United States while evading the freeze order by sending the funds to its correspondent bank account in New York. So we ask again that the District Court's order be reversed, but this time to avoid the risk that we're just going to be back here in front of you again two or three years down the road, we ask that the Court find that the receiver has alleged personal jurisdiction over Victoriabank under the prima facie standard and order that Victoria's motion to dismiss should therefore be denied. I'm going to give you the factual basis for why we think that you have the ability right now to make that decision. Here are the key facts, and many of them are undisputed. It's undisputed that the District Court entered a freeze order in August 2012 that required all banks holding funds that were a part of the Zika Rewards Ponzi scheme to freeze those funds or turn them over to the receiver. It's undisputed that at the time that order was entered, Victoriabank in Moldova was holding over $13 million in a bank account belonging to Payment World Moldova, and that those funds were related to the Zika Rewards scheme. It's undisputed that Victoriabank received a copy of the freeze order by letter dated September 11, 2012, and by email dated September 14, 2012. And it's undisputed that two weeks later, on September 25, 2012, $15.5 million was transferred from the Payment World Moldova account to Victoriabank's correspondent bank account at BNY Mellon in New York, and from there to bank accounts in Russia, where those funds are no longer accessible. And it's undisputed that as of today, the receiver has never been allowed to obtain jurisdictional discovery from Victoriabank to test Victoriabank's assertions that it is not subject to personal jurisdiction in the United States. Now, there's also a few disputed facts. Most significantly, the parties dispute whether Moldovan law required Victoriabank to comply with the freeze order when it received the order in August of 2012. The receiver has an expert who says that Victoriabank was required to comply with the order. Victoriabank has an expert who disagrees. That is the factual dispute that was at the very heart of the district court's decision in this case. The district court weighed the affidavits presented by the two experts. He weighed their self-described credentials, and he decided that he believed Victoriabank's expert more than he believed the receiver's expert. That was error at this stage in the case. At this stage, all factual allegations must be construed in the light most favorable to the receiver. The receiver's allegations must be assumed to be credible. All inferences must be drawn in favor of the receiver. That means that if the receiver and Victoriabank have presented competing allegations, the court should generally, and we certainly think here, resolve that ambiguity in the receiver's favor. That's what the prima facie standard requires. And the district court's decision or mistake on the standard of review infected the rest of its decision. Based on the district court's deference to Victoriabank's expert, the court decided that this case was analogous to the Reebok versus McLaughlin case out of the Ninth Circuit, a 1995 opinion in which that court found that a foreign bank was not subject to personal jurisdiction in the United States. This case is not Reebok, though. The bank in Reebok was located in Luxembourg, and a court in Luxembourg had entered an order that barred that bank from complying with the U.S. freeze order. The Ninth Circuit said naturally that a foreign entity can't be blamed if it complies with an order entered by a court in its home jurisdiction that required it to ignore an order that was entered in the United States. And here, the district court specifically cited the Reebok case as the basis for his decision. He said this. The court is satisfied after carefully reviewing the affidavits and exhibits submitted by counsel that compliance with the injunction would have been in violation of Moldovan law. Mr. King, yes. Mr. King, I'm sorry. If I could ask you a question. I'm sorry. Go ahead. You ask yours first. You have the place of all activity here is New York. How do you get the jurisdiction to North Carolina? I haven't heard anything you've said so far that tells me why North Carolina and the federal courts in North Carolina have jurisdiction over this case. That's an excellent question, Judge Keenan. And I think that was addressed very specifically by the Seventh Circuit in the SEC versus HOMA decision. The court in the HOMA case, the Seventh Circuit in the HOMA case, when they were considering the application of an injunction that was entered in the Seventh Circuit to activity that occurred elsewhere in the United States, the court there said that the injunctive mandate of a federal court runs nationwide and the issuing court has the authority to deal with defiance of its order regardless of where that defiance occurs. But the receiver didn't file the order until after the money was gone. And that's what concerns me in this case. The receiver didn't register in all the districts until, what, December? And the money was gone in September. So what basis is there for the North Carolina court then exercising jurisdiction? Your Honor, we believe it goes to the minimum contacts analysis that underlies all of these questions about personal jurisdiction. That crosses over from the Reebok opinion to the HOMA opinion to the personal jurisdiction opinions that have been issued by this court. The question is whether Victoria Bank had sufficient minimum contacts with North Carolina in order to be subject to personal jurisdiction in the Western District of North Carolina. Mr. Kinghorn, let me ask you this. You may not agree with my premises. If I say that this is a precautionary order and that your receiver should have domesticated that order in Moldova in order to force the bank to comply with the freeze order, do you agree with that? I don't think that was necessary, Judge Floyd, and I'll tell you why. What you are voicing there is actually a factual dispute or an assertion of legal argument that is very much in dispute in this case. Again, there are two competing affidavits, one presented by the receiver and one by Victoria Bank. The receiver's legal expert says that domestication was not required in Moldova in order for Victoria Bank to be required to comply with the order. The Victoria Bank's expert says that it was, so that is a competing issue where inferences need to be drawn in favor of the receiver. But more fundamentally, we think that under Rule 4, and before I even address Rule 4, let me just note that this question, which I would describe as the sufficiency of service, this wasn't even addressed by the district court in his commentary at the end of the hearing. If there is a question about whether the freeze order was sufficiently served on Victoria Bank, I would suggest to you that that is a basis for remand to the district court, because that was not the basis on which the receiver's motion was, the receiver's sanction motion was dismissed. But under Rule 4, 4F in particular, which relates to service of documents, service of pleadings on individuals in foreign countries, the final part of that provision of Rule 4, Rule 4F3, provides that service may be completed by other means, not prohibited by international agreement, as the court orders. And in this case, the freeze order itself has language in it that specifies the ways in which it might be served on the banks that are subject to the order. In particular, the freeze order says, let me just quote it so I have it accurately. The freeze order says that all banks, brokerage firms, etc., that receive actual notice of this order by personal service, facsimile transmission, or otherwise, are required to comply with it. Now, Moldova presents a difficult set of circumstances because Moldova is not a party to the Hague Convention on the Service of Process. But the way that Rule 4 provides, if the court orders that the order can be served in any way that is not prohibited by international agreement, then serving the document by that method is adequate to establish service under the federal rules. Yes, Judge Keenan? Yes, Counsel, are you going to address our Hawkins decision and its discussion of lack of jurisdiction over a non-party aiding and abetting? Why doesn't Hawkins have a great impact on this case? I think it does have relevance to this case, Judge Keenan, but I don't think it precludes what we are asking for here. So, in Hawkins, the court took the line of precedent that has been emerging from other circuits on this issue, starting with the Waffen-Schmidt case, and identified that there are two theories of personal jurisdiction that emerge from those other lines of cases. The first theory, and I won't spend any time on it because the Hawkins case made it clear that in the Fourth Circuit this doesn't apply to foreign entities, is that any time that you violate a court order that sort of creates per se personal jurisdiction. But the second theory is what has been referred to in the Waffen-Schmidt case and HOMA and others as the super contacts theory. It really goes to sufficiency of contacts in order to create personal jurisdiction. And the Fourth Circuit said in that case, or said in Hawkins, that that is an available basis for personal jurisdiction. It just has to be construed on a case-by-case basis. And in Hawkins, what didn't exist in Hawkins that does exist here is that Victoria Bank, unlike the foreign entity in Hawkins, reached into the United States, acted inside the United States in order to try to evade the order. So we think that while the court in Hawkins decided that the foreign entity in that case did not have sufficient contacts to meet that minimum contacts requirement, this is a completely different situation. And I would also note that – yes? How does that tie back to North Carolina, though, as opposed to New York when the receiver didn't timely file the order before the money was gone? So the court – the Fourth Circuit actually addressed that specifically in the Hawkins case. While it rejected that per se – that first element of personal jurisdiction, the court said that the foreign entity's contacts with the United States could potentially go to that second element, which is the super contacts theory. The connections with the United States could create those minimum contacts that would be sufficient to create personal jurisdiction. Now, in Hawkins, the Fourth Circuit was not required to reach that decision about whether contacts elsewhere in the United States outside the jurisdiction of the court in question are sufficient. But the court made it very clear that that may be an issue that the court needs to resolve somewhere down the road. This may be the time where that issue needs to be resolved. We think the – yes? Judge Keenan? What kind of information are you hoping to find out in jurisdictional discovery? Sure. So for one thing, we would like to explore much more information about the nature of this transfer of funds, how it went out of Victoria Bank through the bank in New York to the banks in Russia. We think that additional information about that transfer could be very relevant to further developing the minimum contacts analysis for personal jurisdiction. We also think that there may be connections between Victoria Bank and some of the parties that were participating in this Ponzi scheme that could create minimum contacts that would go to personal jurisdiction. So there's a lot of hidden information right now because Victoria Bank has been hiding behind the Moldovan border and saying that we're not able to even seek discovery to find out whether Victoria Bank is subject to personal jurisdiction in the United States. And we think that all of that could be cleared up if we are at the very least allowed to serve subpoenas under Rule 45 and go through that process, which is clearly contemplated. I'm at the end of my 16 minute beginning period. So unless you have any further questions right now, I'll reserve the remainder of my time for rebuttal. All right. Thank you, counsel. Mayor. Thank you, Your Honor. And good morning. May it please the court. I'm Kiran Mehta. I'm appearing specially on behalf of Apelli Non-Party Victoria Bank. This is a contempt case and the receiver appears to have lost sight of that. His briefing to this court and the entirety of the argument that you just heard relates to whether the district court could exercise personal jurisdiction over Victoria Bank. That is a subsidiary question. The receiver has not yet more than four years after this case commenced, come to grips with the underlying controlling question. What is the basis for this indication of the district court's power? The receiver's theory of the case is that the district court has the authority to punish through its contempt power, a foreign non-party for an alleged violation of an injunctive order that was delivered by the receiver to that foreign non-party in that foreign non-party's home country via e-mail. And where that order was not then and has never since been domesticated in that foreign non-party's home country pursuant to the laws and procedures of that home. The district court held that its authority does not extend that far, and it denied the receiver's motion to hold Victoria Bank in contempt. That ruling is manifestly correct and should be upheld by this court. The case began, your honors, in February 2016 with the receiver filing an ex parte motion under seal to hold Victoria Bank in contempt of a freeze order previously entered by the district court. And in the process, seizing $13 million of Victoria Bank's money without any notice, without any opportunity to be heard, and without even any service upon Victoria Bank of any process whatsoever. Indeed, more than four years after the matter, the receiver admits that he still has not served any process upon Victoria Bank. Yet Victoria Bank's funds remain seized while the receiver tries to make his completely unprecedented theory of the case stick. And by unprecedented, I mean that literally. There are no cases, no precedents, none that support the receiver's theory. No cases, none that hold that an injunctive order of a United States district court has any effect upon a foreign bank when delivered to that bank in its home country. Not through some formal court sanctioned process, but by email and without ever having been validated by the courts or the government of the bank's home country. And it is easy to see why there are no cases and no precedents that support this theory. All you have to do is turn the situation around. If a Moldovan court appointed a receiver and issued a freeze order in the case of a Moldovan Ponzi scheme, and that receiver sent a copy of that order to a bank in Charlotte. And the order would be in Romanian, of course, because Romanian is the official language of Moldova. And the Moldovan receiver indicated to that Charlotte bank that the receiver thought that funds in the bank account of, let's call it payment processor, Inc. were receivership funds. Would we countenance a Moldovan court holding that Charlotte bank in contempt if the bank processed a wire transfer of those funds from that account to some other account? Of course, we would not countenance any such thing. International comity demands that the converse also apply. While the receivers theory is unprecedented, the converse, in fact, is not. And the court need only to look at the Ninth Circuit's decision in Reebok, a case factually on all fours with this case. And as the district court noted in its remarks from the bench in deciding this case, I'm referring to the transcript of the proceedings at page 1097 of the joint appendix. And I quote, most importantly, this court finds that pursuant to Reebok, regardless of whether there is personal jurisdiction over Victoria Bank, the court cannot grant the relief requested by the receiver. You see, Reebok is in two parts. The first, and particularly at pages 1391 and 1392 of that decision, deals with the issue of whether the order in question in Reebok, which was a TRO, had any effect upon the Luxembourg bank that was alleged to have violated the order. And this is what the Ninth Circuit said. It said, the record demonstrates that Luxembourg banking law normally compels both the release of depositors' funds on demand and strict secrecy regarding bank accounts. At the very least, those banking laws meant that the Luxembourg bank was subject to conflicting legal demands. But that would assume that the TRO had some force in Luxembourg. In fact, the court continues, the TRO had no effect in Luxembourg because it was never registered there. Unless recognized by the Luxembourg government, foreign judgments do not have any force in that country. Mr. Messer, let's stick with the Fourth Circuit more directly. In fact, whether or not the law of this case. When this case came before us and we remanded the case, can you tell me which option did the district court take that we gave the court? We only gave two. Which one did he take? Well, what the district court did, Your Honor. What you said, Your Honor, is that you could not, the district court could not use the preponderance standard of limited discovery or with limited discovery. So that either the district court had to provide, apply the prima facie standard or provide for additional discovery. And you remanded it. What the district court did was two things. One, it brought on for hearing the receiver's motion to hold Victoria Bank in contempt. And it brought on for hearing at the same time, Victoria Bank's renewed motion to dismiss for lack of personal jurisdiction, which Victoria Bank specifically. Prima facie standard. As to the first, the court said it could not hold Victoria Bank in contempt for the reasons that we've just gone forward, gone over. District court didn't do what we told them to do. Well, the district court, in addition to that, did do exactly what you told it to do. The district court started and said, well, let's see on the far end. What did I make them do, even if I gave you what you want? I don't see how I can get them to comply with anything about the freeze order at all. We didn't tell them to do it. It was very specific what we said. We said, you're determined whether or not, in fact, you have the power to look at the pleadings filed by the, it's power. The state went to the merits of it. And so you see just the opposite. Tell me what, what's the, what lower standard? Didn't we say that every allegation should be made in the light most favorable to the plaintiff? Matter of fact, the district court said it seems murky. What connection Victoria may have had involved with this connection with other players here? What does that mean in terms of what we told them? Well, let me let me answer it in two ways, your honor. First off, the district court did deal with its power and it dealt with its power in the way that we just discussed. That is, it said, I don't have any power regardless of the issue of of personal jurisdiction. But it went on to say, applying the prima facie standard, I don't have personal jurisdiction. And it did so. And your honor alludes to taking all the allegations in the light most favorable to the receiver. In this case, the plaintiff in most cases. And that's clearly the correct standard of law when you're applying the prima facie case. What we have here and Hawkins makes this very clear, your honor, is that you have to test those allegations against the plausibility standard of the. Of of of of Iqbal, basically the Iqbal line of cases. And that's what the Hawkins court said. And I think about page 226 or so of its of its opinion. And and so if if if what we're saying is. What allegations exactly are we talking about here? If we're talking about the ones that Mr. Kinghorn talked about, which is these dueling affidavits, that's something that anybody can look at because the law is translated. And you can see just from the bare paper of the translation of the law that the that the the receivers expert essentially said this is a self executing order. This meaning the freeze order. And the the expert from Victoria Bank said, no, there are very, very narrow categories of self executing orders. And this is not one of them. They have to do they deal with things like marriage and and and birth and, you know, family matters of that of that nature. But as as Judge Floyd was referring to, this is what the Moldovan courts would say is a precautionary measure and a precautionary measure in order to become effective must be domesticated by the courts of Moldova. And there is a process that the courts of Moldova has have have have gone through in order to allow for that domestication. So that's one set of allegations. But if you can, you can look at it even even closer, Your Honor. Basically, what the what the receiver says is that somehow Victoria Bank was in on the scheme. And if you look at the joint joint appendix, and I believe about page 790, it lays out what the receiver says are the is the factual basis for that claim. And it is entirely conclusory. All it says is the bank was a willing participant in the scheme. Under Iqbal, that entirely conclusory allegation is not absolutely not entitled to the presumption of truth. Where we are there, then, Your Honor, is in the unspam world, which again is a Fourth Circuit case. And in the unspam world there, the court said a conclusory allegation that that attaches to or that asserts that there's some kind of a conspiracy or that the defendants in the case were involved in some kind of a conspiracy doesn't pass muster because they're just conclusive. And if you in order to pass muster, the allegation must make some attempt to show that these transactions in question are something other than ordinary course of business transactions. And so when you look at it in that light, Your Honor, again, the receiver and let me let me back up one step further. When you're when you are assessing the truth of a quote factual allegation, if in fact it is a factual allegation as opposed to a conclusory application and the allegation is directly contradicted by documents that are referred to in the allegation, then you don't have to. You don't have to give that allegation the presumption of truth. And that's exactly what happens here. Here, the underlying bank transactions are all a matter of record. They were referred to by the receiver. They were obtained from Bank of New York Mellon by the receiver and presented to the district court. And those records show and the declaration of the Bank of New York officer procured by the receiver show that the transaction in issue at issue was initiated not by the bank, but by the customer of the bank. So in order to get to a quote willing participant, the receiver must make some factual allegation that collapses the bank into its customer, which is essentially be a veil piercing type allegation. They have not done that. They did not do that in their statement of what the facts the facts are. In this case, they originally had that in some of their papers and some of their their theories. They have completely abandoned. You won't see bail piercing in the briefs that are in front of you today without bail piercing. Your Honor, there cannot be a willing participation the way the receiver says there is, quote, willing participation. And without willing participation, you're in unspam. And those allegations are insufficient as a matter of law under the plausibility standard under the Iqbal standard. Make out a prima facie case of jurisdiction. And I hope I've answered your question there. It was a long answer. Yeah, you did. Now you answer the question. But I think the answer to the question in the court, in my mind, it did what you said it did. But it didn't do what we told it to do. Well, it did, I think, apply the prima facie standard. And it came to the conclusion that it did. Well, this record was before this court before. Right. What the allegations were in terms of pleadings. Correct. No, Your Honor. Actually, it was not. Not at all. Not at all. What was before the what was before the court then was essentially a motion for it to hold the Victoria Bank in contempt. When the case came back, the district court said, well, what am I supposed to do with this? And the parties had essentially some competing views on what the district court should do about it. But one thing that everybody was very clear on was the receiver needed to make factual allegations that the that the the court could then review in terms of what the prima facie standard would would be applied to. And what I what I just referred to at page 790 of the joint appendix is that later factual allegation that deals with the with the willing participation issue. It is completely conclusory. And under unspam, which also had completely conclusive allegations, this court, the Fourth Circuit, said that's not good enough to make out a prima facie case. And that's where we are exactly where we are today. If you go down the road of the prima facie, the prima facie issue on on on jurisdiction, I would submit to you to you your honor. And actually, I do recall having a conversation about this with with Judge Keenan the last time. The underlying issue beyond jurisdiction is what is the power of the court to enforce its order through contempt against a foreign national when the foreign national is acting abroad? And I think Judge Keenan cut me off back then because that, of course, was not an issue, because that's not what the what the court had even ruled on below. The court has ruled on it now. The court ruled specifically on it now. So, but if you go to if you if you put all of that to one side and you go just to the issue of personal jurisdiction. There are essentially three problems that the that the receiver has. The first is he's never served Victoria Bank with anything. He's never formally made Victoria Bank a party to this contempt proceeding. And the Hawkins decision says that he must he must serve even a non party in a contempt proceeding if he wants to make the contempt proceeding have any kind of validity towards that non party. He's never done that. He admits he didn't do that in his supplemental briefings. Secondly, we have the issue of is there jurisdiction under the laws of New York? The answer clearly is no, because if all you're doing is is using the the corresponding bank account correspondent bank account in the normal course of business. That's not sufficient to apply the New York. I have the New York long arm statute apply to the transactions in question. The the and then they try to get around that by saying, well, it's a willing participant, but then we're back into unspam. There is not a factual allegation that supports a willing participant. And the third and final thing is what Judge Keenan alluded to earlier, which is OK, if you can get to New York, how do you get to North Carolina? The only way you get to North Carolina is if the receiver has gone through the process of registering his receivership in New York in order to piggyback on the on the jurisdiction in New York to bring it to North Carolina. And the receiver didn't do that until after the money had gone. And when you when you look at it in those in that light, your honor, even under the prima facie case, the receiver loses because he didn't serve Victoria Bank, because he doesn't have jurisdiction in New York. I'm a patient and because he didn't get the requisite authorization to move New York jurisdiction to North Carolina. And I see my time is up. So I will stop unless there are questions. Thank you. Thank you. All right. Thank you, Your Honor. Three very brief points that I'd like to make in my remaining time. First of all, returning to Hawkins, and this was a point that I was trying to make in my response to one of Judge Keenan's questions earlier. The court said in Hawkins that if if the theory is correct, that minimum contacts are what we're looking to here and courts may exercise jurisdiction over non-party aiders and abettors nationwide, then we should arguably adopt a national contacts analysis looking to foreign non-parties contacts with the entire United States, not just the forum. And then the court said it didn't need to make that decision in Hawkins because all of the non-parties contacts were with the state of Virginia, where the court was located. Well, this may be the time to reach that conclusion. Does the Fourth Circuit agree with the other circuits that have said, such as the Seventh Circuit in Houma, that when when a court is enforcing its powers to enforce its own orders, it can look to nationwide contacts. The contacts don't have to be with the home jurisdiction. And that only makes sense. It just simply doesn't make sense as a matter of federalism, federal comedy in particular, that a foreign entity could be able to reach into the United States, use the banking system of the United States in some location other than the home district, but somehow evade the jurisdiction of the home district in terms of its power to enforce its own orders. So we think that this case could be resolved in the receiver's favor in a way that is entirely consistent with Hawkins. It may require an answering of that question that was left unresolved in Hawkins. But there's nothing in Hawkins that calls for a decision that is inconsistent with what the receiver is asking for here. I'd also just like to point out that counsel indicated that what the receiver is asking for here is unprecedented. That's not the case. We have cited at length in our briefs the Abiy Joudi and Azhar trading case, trading corporation case out of the Eastern District of Pennsylvania. That case, unlike Reebok, is truly on all fours with this case. There you had a Cigna. The defendant was asking the district court to hold two foreign individuals in contempt for violating an injunction that was entered by the Pennsylvania court. The foreign individuals, neither of whom were United States citizens, challenged the court's personal jurisdiction for all the same reasons that Victoria Bank is asserting here. But the district court there rejected their challenge, finding that the individual's arguments distorted the jurisdictional analysis by focusing exclusively on nationality and not on the respondent's actions within the subject forum, which is what the court described as the touchstone of the personal jurisdiction. What actions do you have in the subject jurisdiction? Well, again, Your Honor. No, no. What actions did, in North Carolina, the subject jurisdiction, the ULAs, they give? Well, so they violate... Victoria Bank. Victoria Bank. What do you think they did in North Carolina? Well, Victoria Bank knowingly violated a freeze order that had been entered by a federal court in North Carolina. But you had not registered at that time. Contempt has to be based on what's going on at the time. It seems like, you know, because we're talking about contempt, you could be in contempt of an order and never be liable to pay over any funds. Do you agree with that? Just because... No. Right. Is that correct? It has nothing to do with whether or not ultimately you have to pay over the funds. The question is, are you involved in contemptuous conduct before the court, right? Absolutely. I do agree with that. What did you allege that Victoria did in North Carolina? Well, I think the connection to North Carolina is that the contempt, the freeze order was issued in North Carolina, and that's the order that Victoria Bank violated. Victoria Bank stepped into the United States in New York in its efforts to violate that order. And because we're talking about an order entered by a federal court that is being enforced under Rule 65, the Homa case and other cases, and as this court recognized in Hawkins, it's appropriate to look to contacts with states other than North Carolina in order to answer that minimum contacts question. That's what we're asking. Did you ask the district court for discovery? Yes, Your Honor, we did. I mean, what I mean, when I was practicing law, I called it, did you stand on the table? I mean, like, no, we have to have discovery here. Did you do that? Because I want to know what the response of the district court was when you did, when you, you know, figuratively stood on the tables and we must have it. What was the response? Yeah, unfortunately, Your Honor, the response from the district court was that he, the court felt that it didn't have the power to allow even jurisdictional discovery until it first made a finding of personal jurisdiction. But that was in contradiction to our remand, wasn't it? It is in direct contravention, and it's also in direct contravention to the law of the circuit, to the law of federal courts nationwide, which make it very clear that courts have the power to allow jurisdictional discovery to determine factual issues relating to jurisdiction, even before the court has made a final determination about whether a party is subject to personal jurisdiction. Mr. Kingston, leaving aside the national context theory, if we leave that aside, what's your best case? It adds to the connection to North Carolina. Yes. Okay. Our best case is that you. Essentially, just one sec. It seems to me that if we don't accept your national context theory, you lose. Tell me why that's not correct. I don't think that's necessarily true. I think that this court would have the ability to say that what we're dealing with here is a foreign entity that was intimately involved in a Ponzi scheme that was operated out of North Carolina, that was uncovered in North Carolina, that was subjected to a receivership that was put under the jurisdictional control of a federal court in North Carolina, that was subject to a freeze order that was entered by a court in North Carolina. And that entity knowingly violated that order after having received it by sending money back into the United States. So I would suggest, Your Honor, that even without looking to the conduct in New York, there's sufficient contact between Victoria Bank, its banking activities and the Ponzi scheme that was operating in North Carolina to create minimum contacts here. We just feel that intentionally availing itself of the U.S. banking system puts this well over the threshold to show that minimum contacts are present here. I am well past my time. I recognize that. I'm happy to answer any other questions. Otherwise, I will stop. All right. I don't see any hands up. Thank you so much, counsel, both counsel. We appreciate your argument. Please pardon that we can't engage in our normal custom of coming down to shake your hands. But please know that our spirit is the same and we appreciate so much your being here. And thank you so much for both of you for your very good arguments. And be safe and be well. And Ms. Coleman and the clerk, would you please adjourn the court? This all request stands adjourned. Signed by Godsend of the States and this honorable court.
judges: Roger L. Gregory, Barbara Milano Keenan, Henry F. Floyd